May it please the Court, Kevin Page for Mr. McCall. Setting aside attempts, which I hope the Court will let me talk about separately in a moment, 2251A requires that a minor actually engage in sexually explicit conduct. Attempts aside, there is no violation of the statute without sexually explicit conduct undertaken by the minor. It is not a statute that punishes images, including children, that gratify the defendant's sexual desire. Rather, the gravamon of the offense is sexual exploitation of the child in front of a camera. For that reason, if a defendant does nothing to affect the child's behavior and the child happens at the moment of recording to possess no independent sexual intent, the defendant must be acquitted. Put another way, somebody with sexual intent must control or influence the conduct of the child in order to violate 2251A. Would there be another statute that would apply to a situation, as you're saying, if someone takes film or picture of a nude child without the child knowing about it? Is that then something legal that can be done? Absolutely not. There are Texas, there are state statutes which forbid all video voyeurism of naked people without their consent. So the re might also be liability under the statute struck down in Ashcroft for simulated sexually explicit conduct. Counsel, I don't remember if the Eleventh Circuit fairly recent case in the United States versus Holmes has been something that you've addressed. What it says is that they joined the Eighth, Ninth, and Tenth Circuit to hold to the contrary of what you're just indicating. Is there a circuit split on this, or are these the only circuits, if you're always so well prepared, I imagine you're familiar with Holmes. Are these the only circuits really to address this precise issue? There is a circuit split, and it's with this circuit. I have to concede that there are out-of-circuit cases which hold that voyeuristic videotaping, surreptitious recording of very similar conduct satisfies the statute. But I don't see how those cases can be reconciled with Steen and, more importantly, with Carroll. With your reading of Steen and Carroll, which we'll hear about, I'm sure. Well, I mean, even a correct reading or an indisputable reading is a reading, Your Honor. And the reason that we know that this is the correct reading of Steen and Carroll is really five different ways. One is Steen tells us as much in clear terms at 826 when it says the film must depict sexually explicit conduct. Grimes similarly says we have to ask, did the production involve the use of a minor engaging in sexually explicit conduct? Now, showering, getting ready for a shower, drying off from a shower, is not sexually explicit conduct, particularly or at least if the person doing those things is not aware that they have any kind of audience. It seems to me Steen had more to do factually with so little was captured on the film. There are some comments, there are some statements in there. You mentioned the relevant page, a particular footnote seems to be talking about that. And I'm wondering about how far we really should be taking Steen. I know how far you think it's already there, but it does seem to me it's talking about a set of facts where the film really was not the kind of film anywhere near what was done in our case and has been produced in most of these cases and, in fact, was probably fairly unsatisfying to the taker of the film. Well, the critical similarity between them is that neither tanning nor showering is sexually explicit conduct. By itself, that the intent has to be imported by the defendant in order to render that lascivious in some way. At a minimum, Steen should have been convicted of an attempt if the defendant can be convicted of either an attempt or substantive offense here. Did that case discuss attempt, do you recall, Steen? It did not, but it was within the—we would expect a different outcome in Steen. If it was considered, but since that wasn't considered, I wonder how much weight to give that attempt wasn't discussed there. I think we have to give it—well, we give it no weight, the fact that it wasn't discussed, because, I mean, that's just— Well, but do you want to give it the weight that attempt, it would have at least covered it, that attempt at least would have applied to this? And it seems to me if the Court doesn't say yea or nay, then the case doesn't really stand for anything about attempt. The Court says nay by reversing in Steen. We would expect a different outcome. We can't—I submit that the proper view of precedent and the binding force of precedent is not that we dig through the briefs to see what the parties argued. I think we dig through the opinion, though, to see what they discussed.  Independent of Steen, I would also—and the other point I want to make about Steen is attempt or no attempt, can we really doubt that the defendant had a sexual intent or a lascivious intent in Steen in that case? And so if Steen—if in Steen we can't import the defendant's lascivious intent, why are we permitted to do it here? What Steen and Grimes and Carroll stand for together, each of them in different language, all of them very clearly certainly together, is that the statute's liability turns on what happens in front of the camera, and in particular that it must be the minor's sexual conduct. It is a statute that is targeted towards people who make minors engage in sexual conduct. If there had been no camera in this case, the minor's conduct would have been identical to the way it was captured on camera, and nobody would have thought that it was sexually explicit. Are you arguing that we need to look at the intent of the minor when the minor is unknowingly being filmed, that part of the crime is what was the minor's intent? Absolutely not. What I'm saying is there are two ways that the statute can be satisfied. One way is when the defendant influences the child's behavior, poses them, et cetera, in front of the camera, then we can sensibly say that the minor's engaged in sexually explicit conduct, even though the defendant is making them engage in that. The second way is we can imagine a case where a minor does possess independent sexual intent and the defendant voyeuristically records them, a mature child with a boyfriend or a girlfriend, for instance. So I don't want to say voyeurism can never, ever satisfy the statute. So if the child does possess a sexual intent, that can be independently sufficient. But if the child does not, if it's ordinary mundane conduct like showering or sitting in a tanning salon, then the defendant has to have some influence over the child's conduct in order to satisfy the statute. How do we – in Steen, I think it was just a matter of seconds that showed the private areas of the body, whereas the case that we have here, it was a large, much larger amount of the video showed the private parts of the minor child, and it looked like the film was focused on her private parts here as opposed to the Steen case where it just was a glance of a matter of a couple of seconds. Does that matter? No, it doesn't matter, Your Honor. I submit. And the reason is that Steen tells us much. The film must depict sexually explicit conduct. Even if the camera had caught more of the child, more of the child's genitals in that case, then that wouldn't make the child's conduct sexually explicit. So it doesn't – in other words, what happens to appear on the camera is not – or in the image is not dispositive. And the reason we – one really good way that we can know that is by looking at Grimes, which shows us the converse proposition where somebody is posing a child, and what happens in front of the camera is sexually explicit conduct. By the time the defendant has the image, the final image that appears on the defendant's computer is pixelated. And so the defendant doesn't even possess an image, an exhibition of the genitals by the time that he has the camera, but because what happened in front of the camera was the lascivious exhibition of the genitals. The defendant in Grimes was convicted of that. So between those – between all of those cases, they show that what is – the critical thing is what happens in front of the camera, and that would have been no different and not at all sexual if the defendant had not even existed. Let me ask you on sort of a bigger jurisprudential question. The DOST factors, we have used those in some of our opinions. Do you think those are useful? They're quite useful in a case where the defendant is influencing the behavior of the child or there was some arguable sexual – independent sexual intent by the child. But as this Court has always noted, and every court that uses the DOST factors I think notes, they're not dispositive and they're not exhaustive in every case. They're a tool to tell us whether lascivious exhibition is present in a particular case because they reflect what the defendant has done to the child in that case. Well, Weinstein and Judge Higginbotham suggest we not use them at all, and I just wondered what your take was on that. I wouldn't take that position on plain error, Your Honor. And so I do want to talk for a moment about plain error in this case. Alvarado-Casas says plainness may be established either by binding judicial interpretation or statutory text. I submit that here there is both. But I also want to point to what I think is a very real difference in the way this Court applies plain error in cases involving potential conviction for a non-offense, in other words, an insufficient factual basis. I don't think any reasonable observer who read Spreel, Bayman, White, Johnson, and Meacham, all cited in my brief, could reasonably think that the plain error applied there is the same kind of plain error that this Court applies in other cases. Spreel and Bayman expressly state that the factual scenario before the court need not have previously appeared. Spreel scarcely mentions the plain error standard and only basically in the breach in Note 10. White treats a separate but related objection as adequate to preserve review, something this Court, as I've come to learn, very rarely does in any other case. Johnson reverses for plain error for one of an interstate nexus in an arson case even when there's an interstate insurance payment. And Meacham reverses a conviction sua sponte without it even being preserved in the court of appeals, much less below. So together those cases, I think, no reasonable observer could think that we're doing that this Court is doing the same thing on plain error in factual basis cases as it does for others. And there are three very good reasons for that. One of them is, as White observes, that affirming such a conviction is literally the knowing incarceration of a person who has not broken the law with which they are charged. We don't allow this right to be even affirmatively waived, the right to challenge a factual basis or to appeal on that basis. It's strange that we allow it to be merely forfeited by inaction. Second, affirming a conviction for non-qualifying conduct because of plain error is not very efficient. It's rarely going to change the outcome. A defendant whose conviction is affirmed because of plain error only will have an actual innocence exception to almost any procedural obstacle in collateral review, including a waiver. And third, the purpose of requiring a factual basis is precisely to protect a defendant who does not know that his conduct is legal. And a defendant of that kind is very unlikely to object. Finally, with the little time I have before 15 minutes elapses, I want to join the government's record with the video and ask the court to reconsider its denial of that. And then I would ask the court to, as it is permitted to do, encouraged to do in Trejo, to use that as part of the record and affirm if any reasonable fact finder could find that the evidence in the record, including the video, supports the conviction. The defendant is not interested in a new trial, does not seek a new trial, in the event that the court believes that the video arguably supports the conviction in this case. But there's no dispute between you and the government over what the video depicts, is there? Well, there is a dispute about whether it depicts lascivious exhibition. Well, I mean, I know that, but I'm talking about you don't – I didn't think there was a dispute over what's described as being on the video. Yes, there's a dispute about what that means, but I didn't understand that there was a dispute between the sides of, you know, what's shown on there. Well, we might – the government might enlighten us a little on that if they care to, but provide more information to the court about that. But as I understand what the government is saying, some of the government's brief can be read to suggest that the conduct on the video is sexual in a way that might be different from a different showering video in that case. Thank you. I may have misunderstood, and the government can't speak for itself. All right. Thank you, Mr. Page. Thank you. All right. Let's hear from Ms. Birch. Satisfy me on that point before you launch on the merits. What about the video? I guess it was sealed below. Your Honor, the video was never entered into evidence below because the defendant pled and admitted to the things on the factual resume, so it was never submitted to the district court. The district court never had the opportunity to view the video itself and apply the DOS factors because of the factual resume, which admitted a lascivious exhibition. And so there's a joint motion for us to what? Yes, Your Honor. Prior to the submission of the brief, we filed a motion to submit the video, supplement the record with the video, and also to submit the sentencing letter to the court. The court granted it as to the sentencing letter but denied it as to the video on the basis that the video was contraband. Okay. Well. I'm sorry, Chief. You have this. Why don't you keep going? No, no, no. I was just going to frame the issue to say, well, since you brought it back up, even though it was denied, we'll just deem it carried with the case and we'll. Well, I want to pick up on something Mr. Page said. Are you arguing, and we'll find out perhaps, but just to have a hearing now, are you arguing that, in fact, this is more than just a girl showering, that there is something in the nature of her appearance that could qualify as lascivious conduct? Your Honor, what we're arguing is that the, not that she herself did anything sexual, but that in the nature of this private video, these private moments in the bathroom, she's seen on the video doing things that are, that relate to sexuality, grooming her pubic hair. There are moments in the video where she bends over and displays her genitals, and the video catches that. So we're simply arguing that that is a lascivious exhibition. Those moments on the video qualify as sexually explicit conduct by statute because they are lascivious exhibitions of the minor's genital and pubic area. Isn't your position in this case, much like the cases from the other circuit that I described or identified earlier, that the mere filming of someone, if it's displayed well enough showering, would qualify under this statute? That it can qualify under the statute. Obviously, in Steen, the court found under the DOS factors that it didn't qualify. But I don't believe Steen ever made any sort of outright statement that never could a voyeuristic video, never could a secret video, we don't even contend that this is voyeuristic but that it's just a surreptitious video, that never could that qualify as attempted or actual production of child pornography because the child didn't know and the child wasn't directed. Instead, what we believe Steen stands for is that in that very limited set of circumstances where there was, I mean clearly the court was concerned there about Mr. Steen's intent. He's in a tanning place. He doesn't expect there to be minors there. They find no evidence of his interest in minors on his computer. The minor that he captures is only visible on the screen for 1.5 seconds on the side of the screen. And they use the DOS factors and say, government, that just simply isn't lascivious exhibition and therefore it's not sexually explicit conduct. But that's not what we have here. Well, but Steen itself is, and I think Mr. Page may ultimately be, his argument may not certainly be supported by this panel, but he certainly is correct that Steen is taking an entirely different view it seems to me than Holmes from the 11th Circuit recently and the other cases when it seems to be making a distinction that this court has found, talking about Grimes, that a child could be used in the production of a photograph, but the image in the photograph could be one that did not capture the child engaging in sexually explicit conduct. And it does seem to me that these other circuit cases, 11th, 9th, whatever the others were, take the contrary view. It's enough to be filming somebody taking a shower. They do take the contrary view, and they take it in a variety of different situations, showering, wrestling, doing cartwheels on the beach. But note that the defendant is still using those minors, and he's using them to engage in sexually explicit conduct by the way that the defendant has framed, in these variety of cases, has framed those videos, those photographs, those other things. This case is very different from Steen. The only thing that's the same is that there's the secret camera. This defendant was related to the victim. He admitted in the factual resume that he knew how old she was. He admitted in the factual resume that he carefully positioned and aimed the lens of the camera with the intent of obtaining images of the genitals and pubic area of the girl, as well as her breasts, and that he did obtain such images. And so there's this difference in the analysis of the DOS factors in this case than in Steen. Because of those admissions, he does obtain her genitals and her pubic area, and it's not for 1.5 seconds. It's that portion, just talking about the genitals and pubic area, is almost six full minutes of the video. There are also portions of the video where other parts of her are partially clothed, but those are the parts that focus on her genitals and pubic area. And those are the parts where those are fully exposed. One other issue here is, and the court in Steen talked about how that defendant had no criminal history, no documented sexual interest in children, and we have quite the opposite here, because we have a defendant that not only has a documented sexual interest in children, but he actually has a conviction for aggravated sexual assault of a child. And this is not somebody that has merely voyeuristic tendencies. This is somebody that has a sexual interest in children and has previously acted on that sexual interest. And that has to play into how we weigh the DOS factors in light of what this defendant was attempting and admitted that he was attempting to get and did get. We submit that at least three of the DOS factors, if not more, support the finding of lascivious exhibition in this case, that this court's unpublished opinion in Beavers supports that. That was a showering video. That was a secret video. And in that case, the child did not know she was being filmed, and the conviction was affirmed on the finding that three of those DOS factors applied to that video. If the court doesn't find that this was an actual lascivious exhibition, at the very least, we have attempt. Attempt was charged in the indictment. The defendant pled guilty to the completed offense of production, but the factual resume clearly supports the attempt in terms of the language that's set forth in the factual resume, where he says, this is what I was trying to get. This is what I was attempting to get. And we would ask the court to consider the Eighth Circuit Johnson case where that was the, I believe, the wrestling case, or not the wrestling, it was the case where the girls are weighing in and the coach is secretly recording them as they're weighing in, and he's got images of their body. And what the court found in that case is because attempt was charged, that it didn't really matter what he ultimately ended up with. What we know is what he was trying to get, and that that was proved by the evidence. And we believe the same is true here. Also, let me ask the same question of you. I asked of Mr. Page about the DOS factors. They have been criticized. It seems to me they're one district judge's effort to figure out how to do this. Do you have, from your work with cases like this, some sense that that's a good set of factors, or whether we ought to be, how useful they are? They may help you in this case. They may not. So I don't, your principal interest right now is this case, but can you kind of take the bigger picture, and what do you make of them? I think that so many of the courts have adopted the DOS factors that we just sort of walk through life accepting them as a matter of life. But I think in some cases they can be very useful. One of the concerns I have about them at this point of just generally where we are in criminal prosecution is that we're not seeing as many of those older-type cases, those Russian production studio-type cases that we were seeing years ago. Now that everybody has a cell phone and every cell phone has a camera, these surreptitious recordings, both in terms of stranger recordings, but really frequently in terms of family living recordings, are becoming, I would say, just in my experience, more of the norm than those old-time studio photos where it's clear. You look at the child and you say, oh, she's in an outfit that's inappropriate. Her legs are displayed inappropriately. And so to the extent that the question is does the DOS factors help in those kinds of images or videos, yes. Do they necessarily get to be terribly helpful when we have these secret recording videos? Sometimes yes and sometimes no. It seems to me they're structured to try to figure out if this is an art film or it's a sexually explicit film. And that's not ever, it seems to me, what we're dealing with now, which I think is the point, in a sense, you're making when you refer to what videos used to be that were prosecuted. But all right, you can move on. I don't mean to make you tarry there too much. Let me make sure I understand. Is your attempt to argument a fallback? Your Honor, we absolutely believe that this was production. But if the court disagrees, I wouldn't describe it as fallback, but I would describe it as alternative. Yeah, an alternative. And we also, because of Steen, there's always this discussion about charging attempt because if we don't actually get there, then certainly we can get there through the attempt language in a lot of these surreptitious cases, and I think that's the situation in this case as well. I would also submit to the court that if the court finds that this is not a lascivious exhibition and therefore not production and doesn't even find attempt, which it would be obviously for me standing here a difficult proposition, but if we can't get past that there was any error at all, then we would certainly submit to the court that any error was not clear or obvious to the district court, given that even the defendant agreed below that Steen, that his conduct took him arguably outside of Steen. And the defendant was aware of the Steen case. The parties had discussed the Steen case, and the defendant even used the Steen case in his writings to the court to leverage both with the government and the court for a lower sentence. And to the extent that the defendant was aware and does agree that his conduct does not fall under Steen or within Steen, then we would submit that that would make any error not a clear or obvious error to the district court. If even all the parties think it's hard, certainly the district court would be within his – it would have been difficult for the district court to see any error with regard to Steen. Counsel, one of the points that Mr. Page was making, if in fact he is not guilty of qualifying conduct, there certainly is an inefficiency of saying just stand down and bring your 2255 action and be let out of jail then. You got any response to that? Your Honor, I would just submit that it would not be an inefficiency, but that it would be the appropriate steps that would need to be taken if the district court could not have seen that this was error. And that's our position, that the district court could not have seen that there was any error at all based on what the defense themselves told the court. Well, I heard your primary, secondary, tertiary arguments, and Judge Southwick repackaged my fallback into alternative, good colleague that he is. And I'm not trying to put words in your mouth, but I'm not sure I'm clear on what is the strongest argument you have and that you're relying on. You seem like you're, you know, spreading a lot in the pathway, so one way or the other, you know, you hit this target in a manner of speaking. Said it a different way when I read the briefs, and otherwise it seemed like, you know, the government was making a real strong argument here to sustain this conviction. As I hear the argument and so forth, it just sounds like somewhat backing away from some confidence in the legal position here vis-à-vis this claim. This is not addressed to you personally, I'm just talking about the way the case is. And so I'm wondering, is that due to, and you don't have to accept my characterization of it, it's just that, you know, affirm it to, well, if not that, then this, and if not that, then this, and if not that, then this, you know, to get me there. All of which is springing not from a fully tried case, but this is springing from a guilty plea. And so, you know, we sort of way wound back, you know, in terms of this is a guilty plea, and whether or not there was a sufficient factual basis. So it's becoming, to me, more complicated, not because of the dispute over what the video shows, et cetera, but in this unwinding, and I don't know, maybe that's, and you can tell me, is that due to the government's uncertainty warranted by how this court may be going to read Steen and or apply the Doss factors, you understand what I'm saying? I mean, is that, which if it is, I understand, I'm not criticizing, I'm just telling you that's what I'm hearing, that any lack of confidence may be due to just not knowing exactly where Steen fits into this. Is that a fair way? I think that's fair, Your Honor, and I certainly don't mean to show any lack of confidence. From the very beginning, the government's position in this case has been this is production of child pornography. That's how we charged it, both a production and attempt, but that's how we charged it, that's how we resolved it, and that has always been our position. I think my effort here is to give the court confidence and to comfort the court that there are several ways to resolve this case that are fair and appropriate. Well, it also seemed to me that, and you can correct me, that may be tied to this renewed motion about the video because you started off your argument saying, you know, this is lascivious. And in renewing the claim about the video, that once we see the video, I took it your strongest argument being that this is lascivious. Regardless of anything else, is that also fair? And that this is lascivious and there's no dispute about what's on the video. The dispute is clearly about how do you characterize what's on the video. But I do want the court to also have confidence that obviously we believe the appropriate characterization under the DOS factors and even outside of the DOS factors and outside the four corners which this court can look at is that this is a lascivious exhibition. And without trying to lose any confidence, I do also want the court to know that there is clearly the attempt here. And so even if you look at it and go, I don't know if that's lascivious, you can still say, but he was attempting to get lascivious exhibition because that's what he said he was attempting to get. Well, that's a good point because I was just about to ask you, assume we get through the rest of that down to the attempt, what would you have us hold? What's our holding? You affirm the conviction. Because he already admitted to the attempt. The factual basis sufficiently embraces the attempt because he acknowledged that's conduct or behavior that he performed. That's absolutely correct, Your Honor. Okay. Judge Shoffman, I'm sorry, I cut you off. That's all right. You got a closing comment for us? I would just submit to the court that this is a lascivious exhibition. Because it's a lascivious exhibition, it qualifies as sexually explicit conduct, and we would ask the court to affirm. Thank you. Thank you. All right. Back to you, Mr. Page. May it please the Court. If the statute requires, as I submit it does, an effort to influence the conduct of the child, then an attempt to violate the statute requires an effort to influence the behavior of the child, and that's not what this is showing. Now, we might imagine that there is another way to attempt to violate the statute, which is to attempt to create a recording in which the child independently engages in lascivious conduct. But there isn't any reason to believe that a child is going to do that merely because they are taking a shower. A defendant that gets an attempt conviction on that basis would have to have some reason to expect a child to independently be engaged in lascivious conduct. The word used is the one that — there are several words in the statute, but the one used is the one that Steen focused on. And I don't see in Steen a disagreement that the child was being used. It just was not being used. She was not being used in a way sufficient for criminality. There are words like persuades, induces, entices, or coerces, 2251A. But the first word was the first word is employs, but uses is the next word. That seems very broad to me, and I don't know if you have case law from this circuit that would clearly say that the child must be directed. Are you saying that's what Steen is talking about? The child need not be directed, but the child has to be directed unless they're possessing an independent sexual intent, an independent effort to engage in sexual conduct of some kind. And that reason where that comes from is not used, but used to engage. And all three cases that we have that shed the most light on this, Steen, Grimes, and Carroll, all make clear that it is the child's sexual conduct that is the gravamon of the offense. Defendants that either cause the child to engage in that, attempt to cause the child to engage in that, or use the fact that the child is independently engaged in sexual conduct of some kind. Did your office represent this individual at the guilty plea? We did. Okay. So there was an attorney that was satisfied there was a factual basis and recommended and suggested that the client plead guilty? There was. I mean, there are heavy penalties associated with that, and obviously that influenced the behavior of them below. But the imperative that I submit that has to animate the court here is that if this is not sexually explicit conduct, if there was no effort to cause the child to engage in sexually explicit conduct, then the defendant has not violated the statute with which he is charged. And we should not get used to, as tempting as it may be in this case, for reasons we all understand, we should not get used to the precedent of knowingly affirming, knowingly continuing the incarceration of people who have not violated the statute as it is written. What's your position on the government's response about the attempt in the factual basis he admits to? I don't have the language in front of me, but, I mean, the attempt. So what's your response? In TRACO, the court gives a number of kinds of evidence that may be used to substantiate a guilty plea, all kinds of record evidence. But one thing it says that does not carry any evidentiary weight is the defendant's admission that the conduct constitutes the offense in that case. And so all that that factual basis is doing is admitting that this constitutes an attempt. And if my view of Steen and Carroll and Grimes is correct, then the undisputed conduct can't constitute a violation of either the attempt provision or the substantive provision. Thank you, Your Honor. Thank you, Mr. Page. Thank you, Ms. Perch. The case will be submitted.